UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TERRY G.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

20-CV-535 (JLS)

## DECISION AND ORDER

Plaintiff Terry G. brings this action under 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of the decision made by the Commissioner of the Social Security Administration ("Commissioner") finding that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 13. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 15-16. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Title II Social Security Disability Insurance Benefits ("DIB") that was filed on July 19, 2010.[2] Tr. 333.[3] Plaintiff previously filed four other applications for benefits. Tr. 68-74, 630-32. In his fifth and current application, Plaintiff alleged that he had been disabled since December 14, 1995 due to several severe medical conditions, including vision loss, headaches, heart bypass surgery, and back, shoulder, neck, and knee injuries. Tr. 634. Plaintiff's date last insured was December 31, 2001. Tr. 333.

On April 3, 2012, Administrative Law Judge William M. Weir issued a decision dismissing Plaintiff's application in part, on the basis of *res judicata*, and denying it in part, finding that Plaintiff was not disabled during the relevant period. Tr. 369. The Appeals Council vacated Judge Weir's decision and remanded the case for further proceedings. Tr. 376-79.

On December 27, 2013, Judge Weir issued another decision dismissing in part and denying in part Plaintiff's application. Tr. 17-41. Plaintiff appealed, and this Court (Skretny, J.) remanded the case for further proceedings in a decision and order dated July 27, 2015. Tr. 1248-50.

---

[2] Plaintiff applied for DIB, which requires a showing that he became disabled while meeting the Act's insured status requirements. *Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019) (citing 42 U.S.C. §§ 423(a)(1)(A), (c)(1)).
[3] The filings at Dkt. 9 and Dkt. 10 are parts one and two, respectively, of the transcript of the proceedings before the Social Security Administration. All references to Dkts. 9 and 10 are hereby denoted "Tr. ___."

2

On remand, Administrative Law Judge Lynette Gohr determined that Plaintiff had failed to show that he had been disabled for the relevant period. Tr. 1748-80. Plaintiff's request for Appeals Council review was denied, and he again appealed to the Western District of New York. Tr. 1781-87. On September 5, 2019, this Court (Geraci, *J.*) upheld the Commissioner's decision, except as to the step-five determination. Tr. 1733-47; *Gibbons v. Comm'r of Soc. Sec.*, No. 18-CV-311-FPG, 2019 WL 4199786 (W.D.N.Y. Sep. 5, 2019). Specifically, this Court determined that it was unclear as to whether the vocational expert had testified about jobs that had existed at the time of the hearing, in 2017, or at the date of last insured, in 2001. Tr. 1745. Plaintiff's case was remanded with specific instructions for the ALJ to "ensure that the vocational testimony relates to the relevant time period, and to address, to the extent relevant, all other vocational testimony in the record, including any testimony from previous applications." Tr. 1747.

Prior to the new hearing, Plaintiff's non-attorney representative requested labor market surveys and other documentation that might serve as the basis for the vocational expert's opinion. Tr. 1860-62, 1891-1949. On October 11, 2019, Administrative Law Judge Paul Georger (the "ALJ") held a hearing on Plaintiff's case, and vocational expert Josiah L. Pearson (the "VE") provided Plaintiff with a letter identifying the sources of information on which he relied. Tr. 1672-1705, 1869-70, 1873-74.

A few days later, on October 24, Plaintiff's non-attorney representative filed a post-hearing brief asserting that the residual functional capacity used during the

step five determination could not be any less restrictive than the residual functional capacity affirmed by this Court. Tr. 1871-72. Additionally, the brief argued that the hypotheticals presented to the VE during the hearing did not contain any limitations to the performance of simple, routine tasks and making simple work-related decisions, causing the ALJ's hypotheticals to be less restrictive than those affirmed by this Court. Tr. 1871-72.

The ALJ sent a follow-up interrogatory to the VE, this time adding restrictions for simple tasks and simple decisions. Tr. 1876-80. The VE's response indicated jobs available in the national economy that Plaintiff could perform with his residual functional capacity that included additional limitations for simple, routine tasks and simple work-related decisions. Tr. 1882-86.

On January 7, 2020, the ALJ issued an opinion finding that Plaintiff was not disabled as defined under the Act between December 14, 1995 and December 31, 2001. Tr. 1637-59. Plaintiff then commenced this action *pro se*.[4] Dkt.1

## LEGAL STANDARDS

### I. District Court Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The Commissioner's factual findings are conclusive

---

[4] The Court notes its obligation to construe *pro se* pleadings liberally. *Velez v. Microgenics Corp.*, No. 20-CV-387 (JLS) (JJM), 2020 WL 4043240, at *1 (W.D.N.Y. Jul. 16, 2020) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

4

when supported by substantial evidence. *Johnson*, 817 F.2d at 985. "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deference. *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1988); *Byam v. Barnahrt*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant with be deprived of the right to have his disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986; *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that a court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act").

## II. Disability Determination

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. 20 C.F.R. § 404.1545.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ to prove that a significant number of jobs in the national economy exist that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I. The ALJ's Decision

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of December 14, 1995 through his date last insured of December 31, 2001. Tr. 1642-43. He also found that Plaintiff suffered from the following severe impairments: degenerative disc disease at L5-51; degenerative changes in the knees, bilaterally; mild narrowing at the C5-6 disc space; and photophobia in the left eye. *Id.* The ALJ, however, concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 1644-45.

Finally, after considering the entire record, the ALJ determined that Plaintiff, through the date last insured, had the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> [Plaintiff] could occasionally climb ramps and stairs; could never climb ladders, ropes[,] or scaffolds; could occasionally stoop; could never kneel, crouch[,] or crawl; required use of a cane for all ambulation; required a sit/stand option, changing positions every

> thirty minutes; was limited to performing simple, routine tasks and making simple work-related decisions; could not be subjected to intense lighting, which is that which would be found on a runway at night or a baseball stadium at night; and must have been permitted to wear tinted glasses for performance of work duties.

Tr. 1645.

As such, the ALJ determined that Plaintiff was precluded from performing any past relevant work. Tr. 1656. The ALJ further concluded that Plaintiff was not disabled as defined by the Act because Plaintiff's age, education, work experience, and RFC would have allowed him to perform jobs that existed in significant numbers in the national economy at the date last insured. Tr. 1656. Therefore, according to the ALJ, Plaintiff was not entitled to a period of DIB at any time between December 14, 1995 and December 31, 2001. Tr. 1658.

## II.     Plaintiff's Argument for Reversal

Plaintiff argues that this Court should reverse the Commissioner's decision because the ALJ's step five determination was based on legal error. Dkt. 13, at 10-22. Plaintiff advances four points to support this contention.

First, Plaintiff argues that the vocational evidence used by the ALJ was not for the relevant time period. Dkt. 13, at 10. Second, Plaintiff claims that the VE was required to break down by region the number of available jobs in the national economy during the relevant time period. Dkt. 13, at 11. Third, Plaintiff asserts that conflicts existed between the testimony of the VE and the *Dictionary of Occupational Titles* ("DOT") that the ALJ failed to resolve. Dkt. 13, at 14. Fourth,

Plaintiff claims that the RFC determination relied upon by the VE impermissibly required a reasonable accommodation. Dkt. 13, at 20.

Plaintiff also argues that this Court should remand the case solely for the calculation of benefits, and that the remand should be time-limited. Dkt. 13, at 22-25. As set forth below, Plaintiff's arguments are without merit.

### III.   Analysis

At the heart of this case is the issue whether the ALJ's step five determination is supported by substantial evidence, which Plaintiff characterizes as based on legal error. Dkt. 13, at 6. In a claim for disability benefits, "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of providing his or her case at steps one through four[.]" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). But at step five of the disability determination, the burden of proof shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Perez v. Chater*, 77 F.3d 41, 46 (citing *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)); 20 C.F.R. § 404.1520(g). The Commissioner need not provide additional evidence of the claimant's residual functional capacity to meet his burden. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).[5]

---

[5] As discussed in the Court's prior order, the ALJ in this case properly applied the amended regulation limiting the Commissioner's burden at step five. *Gibbons v. Comm'r of Soc. Sec.*, No. 18-CV-311-FPG, 2019 WL 4199786 at *3-4 (W.D.N.Y. Sept. 5, 2019).

9

## A. There is no evidence that the ALJ relied on vocational evidence that was not from the relevant time period.

Plaintiff's argument that the ALJ relied on vocational evidence that pertained to 2019 rather than between 1995 and 2001 is speculative and not supported by the record evidence.

During the hearing on October 11, 2019, the ALJ posed hypotheticals to the VE, asking him to identify occupations available "from 1995 through 2001" that a person with the hypothetical limitations could perform. Tr. 1693. The VE then identified those occupations that he believed an individual with said hypothetical limitations could perform. Tr. 1695-96. Following the hearing, Plaintiff's non-attorney representative submitted a brief pointing out that the hypotheticals posed to the VE during the hearing did not contain limitations for performing simple, routine tasks and making simple work-related decisions. Tr. 1871-72. The ALJ then submitted a follow-up interrogatory to the VE including those additional hypothetical limitations. Tr. 1882. The VE's response indicated various jobs that a person with such restrictions could perform. Tr. 1885. The ALJ incorporated that information into his final step five determination. Tr. 1657-58.

There is no basis to assume that the VE's responses to the ALJ's follow-up interrogatory did not pertain to the relevant time period. As noted in Plaintiff's memorandum, during the hearing, the ALJ instructed the VE to refer to the jobs listed in the DOT for the period between 1995 and 2001. Dkt. 13, at 15-16; Tr. 1693. Regarding the follow-up interrogatory, the VE indicated that he had reviewed the evidence related to Plaintiff's vocational background in making his

10

responses, and this demonstrates the VE's awareness of the relevant timeline. Tr. 1883. Based on the instructions given by the ALJ to the VE during the hearing, it is reasonable to conclude that the VE continued to understand the relevant time period and limited his responses to the follow-up interrogatory accordingly.[6]

### B. The VE was not required to break down the number of available jobs by region.

Plaintiff next argues that the VE ought to have broken down the number of available jobs in the national economy by region. Dkt. 13, at 11.

Under the Act, "work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (internal quotation marks omitted); *see* 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter . . . [whether w]ork exists in the immediate area in which you live.").

---

[6] Even if the VE's responses failed to take the relevant time period into account, it would not affect the result. The VE named the position of food and beverage order clerk (DOT 209.567-014) both at the hearing and in his response to the follow-up interrogatory. Tr. 1695, 1883-85. According to the VE, this occupation supplied an estimated 20,300 jobs. Tr. 1695. Therefore, the position of food and beverage order clerk (DOT 209.567-014), alone, demonstrates that a significant number of jobs in the national economy exist which Plaintiff could perform—whether in 2017, or between 1995 and 2001. *See Bavaro v. Astrue*, 4 F. App'x 382, 384 (2d Cir. 2011) (summary order) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)) (holding that in making the step five determination, "the Commissioner need show *only one* job existing in the national economy that [Plaintiff] can perform") (emphasis added).

11

Here, the VE opined that the jobs of charge account clerk (DOT 205.367-014), call-out operator (DOT 237.367-014), and food and beverage order clerk (DOT 209.567-014) all existed in significant numbers in the national economy, with 32,268, 12,019, and 10,302 positions, respectively. Tr. 1653.

There is no bright line for establishing the threshold number of jobs needed to be considered "significant" under the Act. *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018). In *Sanchez*, the court determined that, where 9,046 jobs existed in the national economy, the ALJ did not err when determining that the claimant could perform jobs existing in significant numbers in the national economy. *Id.* Because all of the occupations provided by the VE in this case existed in numbers greater than 9,046, there is no reason to determine those numbers not to be "significant" under the Act. As such, the ALJ's determination that a significant number of jobs that Plaintiff could perform existed in the national economy is supported by substantial evidence.

### C. There were no unresolved conflicts between the VE's testimony and the DOT that would require the ALJ to inquire.

Plaintiff also argues that his RFC limitations created an unresolved conflict between the VE's testimony and the DOT, into which the ALJ was obligated to inquire. Dkt. 13, at 14-19. Plaintiff's argument is two-fold. First, Plaintiff takes issue with the fact that the DOT and its Selected Characteristics of Occupations ("SCO") do not specifically reference his requirements for a sit/stand option, the ability to use a cane, the ability to use tinted glasses, and for taking time off task to change positions every thirty minutes. Dkt. 13, at 14-19; Tr. 1645. Second,

12

Plaintiff believes that his limitation to performing simple, routine tasks is incongruous with his ability to perform the positions of charge account clerk (DOT 205.367-014), call-out operator (DOT 237.367-014), and food and beverage order clerk (DOT 209.567-014). Dkt. 13, at 16-19. According to Plaintiff, given his educational background, he is unable to perform in any of these positions, because they require a general educational development ("GED") reasoning level of 3 and a specific vocational preparation ("SVP") level 2, under the DOT. Dkt. 13, at 17; *see generally* Appendix C, *Dictionary of Occupational Titles* (4th Ed., Rev. 1991), 1991 WL 688702 (Jan. 1, 2016).

Plaintiff's argument about the DOT and the SCO not addressing his requirements for a sit/stand option, the ability to use a cane, the ability to use tinted glasses, and time off task to change positions every thirty minutes is misplaced. An ALJ may use the professional experience and clinical judgment of the VE to supplement information from the DOT, as long as the resulting opinion is not undermined by any record evidence. *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014). Additionally, an ALJ only needs to seek a reasonable explanation from the VE where there exists an "unresolved conflict" between the occupational evidence and the DOT. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000).

No "unresolved conflict" exists merely because the DOT and the SCO never address Plaintiff's limitations. *See Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 91-92 (2d Cir. 2019) (overturning ALJ's decision finding that a claimant, who was required to "avoid all overhead reaching tasks," could work in three different

positions that the DOT established as requiring occasional or frequent "reaching"). As such, there was no requirement for the ALJ to further question the VE about Plaintiff's need for a sit/stand option, the ability to use a cane, the ability to wear tinted glasses, and for time off task to change positions every thirty minutes.

Plaintiff's assertion that his limitation to simple, routine tasks is inconsistent with a GED reasoning level of 3 and an SVP level of 2, fails for similar reasons. The ALJ noted: "the [Plaintiff's] representative indicates that the SVP codes of the jobs of charge account clerk, call-out operator, and order clerk are consistent with semi-skilled to skilled work, but a careful review of the DOT shows that these jobs are SVP 2, consistent with unskilled work and consistent with [the VE's] responses." Tr. 1658.

Plaintiff supports his claim by citing to a case in which the district court followed the precedent of the Ninth and Tenth Circuits in holding that there was a conflict between a limitation to "simple, routine tasks" and positions requiring a GED of level 3. *Haman v. Berryhill*, No. 3:17-cv-1752 (VAB), 2019 WL 1383438, at *15-17 (D. Conn. Mar. 27, 2019).

This Court declines to follow reasoning set forth in *Haman v. Berryhill* because it directly conflicts with a Second Circuit holding. *See Jones-Reid v. Astrue*, 834 F. Supp. 2d 381, 409 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) ("There is nothing in the record to suggest that the Plaintiff cannot satisfy the requirements of either GED level 2 or 3 reasoning. The hypothetical limitation of only short, simple instructions is, therefore, not inconsistent with either jobs

requiring GED level 2 or 3 reasoning."). Even with Plaintiff's mental limitation to performing "short, repetitive tasks," Plaintiff could perform the jobs of charge account clerk, call-out operator, and food and beverage clerk.

### D. The VE did not rely on an RFC that impermissibly required a reasonable accommodation.

Plaintiff's final argument is that the VE relied on an RFC that impermissibly required a reasonable accommodation. Dkt. 13, at 20-22. Specifically, he believes that the use of tinted glasses is a reasonable accommodation under the Americans with Disabilities Act ("ADA"), and any reasonable accommodation under the ADA cannot be used to deny him benefits under the Act. Dkt. 13, at 21-22.

Plaintiff seeks support from both Social Security Ruling ("SSR") 00-1c and the Supreme Court's holding in *Cleveland v. Policy Mgmt. Sys. Corp.* supports his argument. Dkt. 13, at 20-22. These sources, however, involve a claimant's potential preclusion from seeking damages under the ADA after successfully applying for DIB under the Act. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999) ("The case before us concerns an ADA plaintiff who both applied for, and received, SSDI benefits."); SSR 00-1c, 2000 WL 38896 (Jan. 7, 2000) ("This Ruling concerns whether an individual's claim for, or receipt of, disability insurance benefits filed under the Social Security Act would preclude the individual from pursuing relief under the Americans with Disabilities Act.").

Social Security Ruling 00-1c does not apply here because Plaintiff has not sought relief under the ADA. *Rotolo v. Comm'r of Soc. Sec.*, No. 6:16-CV-1252 (WBC), 2017 WL 6343673, at *8 (N.D.N.Y. Dec. 11, 2017), *aff'd sub nom. Rotolo v.*

15

*Berryhill*, 741 F. App'x 851 (2d Cir. 2018); *Hino v. Comm'r of Soc. Sec.*, 17-cv-1060, 2019 WL 2635741, at *4 (W.D.N.Y. June 27, 2019). The Supreme Court's decision in *Cleveland* simply means that the Commissioner does not consider "reasonable accommodations" when making disability determinations under the Act. *Hino*, 2019 WL 2635741 at *4.

Even assuming that the need to wear tinted glasses is a "reasonable accommodation" under the ADA, the VE specifically stated that he did not consider any reasonable accommodations in his responses. Tr. 1698. Therefore, Plaintiff's argument lacks merit.

### E. Remand solely for the calculation of benefits would be inappropriate in this case.

Plaintiff also argues that the Court ought to remand this case solely for the calculation of benefits. Dkt. 13, at 22-24. Remand for the calculation of benefits is appropriate only where the record contains "persuasive proof of disability" and there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision . . . ." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999); *see Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (determining that a court should remand for the calculation of benefits only in rare circumstances in which the record contains "persuasive proof of disability").

This case was remanded solely to ensure that the VE's opinion related to the relevant time period. Tr. 1747. Even if this Court were to determine that the ALJ's step five determination was not supported by substantial evidence, the appropriate

16

remedy would be to remand for further proceedings, not remand solely to calculate benefits.

## F. A time-limited remand is not warranted.

Lastly, Plaintiff argues that any reversal issued by this Court ought to be time-limited. Dkt. 13, at 24-25. When remanding a case, a district court may impose a time limit on the subsequent proceedings where there has been an unreasonable delay in the case. *Butts v. Barnhart*, 388 F.3d 377 (2d Cir. 2005).

There has been no such unreasonable delay here. As such, Plaintiff's argument for a time-limited remand—even if any remand were appropriate—is without merit.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's motion for judgment on the pleadings (Dkt. 15) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 13). The Clerk of the Court will close this case.

SO ORDERED.

Dated:  October 12, 2022
        Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

17